UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH L. MILLER, as Trustee
of the Kyung Ae Bae Trust under
Trust Agreement date October 16, 1989
between Kyung Ae Bae as Settlor and
Kyung Bae as Trustee, and KYUNG AE BAE,
as Trustee of the Kyung Ae Bae Trust
under Trust Agreement date October 16, 1989
between Kyung Ae Bae as Settlor
and Kyung Bae as Trustee,

                Plaintiffs,

                                          Case No. 16-CV-10596

    v.                              HON. GEORGE CARAM STEEH

MSX-IBS HOLDING, INC.,
a Delaware corporation, and
MSX INTERNATIONAL, INC.,
a Delaware corporation.,

                Defendants.

_____/

**OPINION AND ORDER DENYING
<u>DEFENDANT'S MOTION TO DISMISS (Doc. 10)</u>**

      Plaintiffs Ralph Miller and Kyung Ae Bae, in their capacity as the trustees of the

Kyung Ae Bae Trust (the "Trust"), filed this suit to compel defendants MSX International,

Inc. ("International") and/or MSX-IBS Holding, Inc. ("IBS") to redeem the Series A

preferred stock owned by the Trust, and to pay a dividend on its common shares, or in

the alternative, to pay money damages.  Now before the court is defendants' motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Oral argument was heard

on June 30, 2016.  For the reasons set forth below, defendants' motion will be denied.

**A. Background**

Because the court is addressing a motion to dismiss and is required to take the allegations set forth in the complaint as true, the facts summarized here are those set forth in the Complaint.  Also, because these same parties previously appeared before this court in a related lawsuit filed in 2009, the recitation of the facts below also derives from this court's prior order granting defendants' motion for summary judgment in that case.

**1.      The Plaintiffs and Defendant International**

Plaintiff Ralph Miller was an executive employee of defendant International when it was formed in 1997.  Defendant International is a provider of outsourced integrated business solutions focused primarily on warranty management, dealer process improvement, and human capital solutions to automobile and truck OEMs, dealers, suppliers, and ancillary service providers.  Miller's employment with International was terminated in 1999.  Miller obtained common and preferred stock of International during his employment and he transferred his stock in International to the Kyang Ae Bae Trust ("Trust').  Plaintiff Kyung Ae Bae is settlor and co-trustee of the Trust.

**2.      The First State Court Lawsuit**

In 2001, plaintiffs Miller and Bae filed a lawsuit against International and other affiliates in Oakland County Circuit Court asserting claims for declaratory judgment, breach of stockholders' agreement, and shareholder oppression.  Defendants filed a counterclaim.  The parties settled the lawsuit and entered into a Settlement Agreement dated August 16, 2002.  That Settlement Agreement forms the basis for plaintiffs'

breach of contract claim filed here.  As part of that agreement, the parties agreed that

Michigan law governs and that any dispute must be filed in state or federal court in

Michigan.  (Settlement Agreement, ¶ 14).  The relevant terms of that Settlement

Agreement provide that so long as the Trust owns any Series A preferred stock,

International's Amended and Restated Certificate of Incorporation ("Certificate") could

not be changed "to decrease the dividend rate, reduce or diminish the accrual, payment

terms, or stated value, or extend the date of redemption" with respect to the Trust's

Series A preferred stock.  (Settlement Agreement, ¶ 4).[1]  The Certificate obligated

International to redeem all of the Series A preferred shares on December 31, 2008 at

the request of the company or the shareholder, provided that the funds were legally

available.

### 3.      Corporate Restructuring of International

In March, 2007, International went through a corporate restructuring.  At that

time, International had approximately $250 million in debt that was to become due in

2007 and 2008.  Had the debt not been refinanced, International was facing possible

bankruptcy.  In order for International to refinance the debt, the lenders required that

International move some of the debt and all of the preferred stock to a holding company.

As a result, a merger agreement took place, defendant IBS was formed, and it became

the holding company for International.  Defendant IBS had no operations of its own and

its only asset was the stock of its wholly-owned subsidiary, International.  Pursuant to

---

[1]Plaintiffs did not attach a copy of the Settlement Agreement to their Complaint
because the Agreement contains a confidentiality provision.  Defendants, however,
attached a copy of the Settlement Agreement to their motion to dismiss.  As such, the
Agreement is now a matter of public record.

that restructuring, International became a subsidiary of IBS.  The merger agreement also provided that the stock of International would be cancelled and converted into new stock of IBS with identical rights to the stock previously issued by International.  All stockholders of International became stockholders of IBS.  As a result of the restructuring, the Trust became a holder of common and preferred stock in IBS, but none in International.  After the corporate restructuring, the redemption date with respect to the preferred stock held by the Trust remained December 31, 2008, subject to the requirement that funds be legally available for the redemption.

**4.      The Second State Court Lawsuit**

In response to the corporate restructuring, the Trust filed a second lawsuit in Oakland County Circuit Court alleging that the cancellation of the International common and preferred shares was a breach of the Settlement Agreement, seeking a declaration of breach of the Settlement Agreement, and an order compelling International to redeem the Trust's International common and preferred shares.  Plaintiffs claimed that the IBS shares were inferior because IBS was merely a holding company with no operations, cash, or bank accounts of its own, whereas International was an operating company with a greater ability to generate cash to pay dividends to the Trust.  The state court granted summary disposition in favor of defendants, finding that shareholders of IBS held the same assets, business, and revenue stream that existed for shareholders of International.  Specifically, the Oakland County Circuit Court ruled:

> Regarding Plaintiffs' specific claim that Defendants breached paragraph 3 of the Settlement Agreement because the [IBS] shares are fundamentally different than the [International] shares that the Trust was to retain under the Settlement Agreement, the Court finds Mr. Minturn's deposition testimony to be instructive in this regard: Particularly, the result of the

-4-

> March 27, 2007 Agreement and Plan of Merger between [International]
> and [IBS] was that [International] became a wholly-owned subsidiary of
> [IBS] after the merger.  The same assets, same business and same
> revenue stream that existed for the shareholders of [International] still
> exist for the shareholders of [IBS].  The total debt of the corporate family
> remained essentially the same, and all that happened is that some of the
> debt is now held at the holding company parent [IBS].

The Michigan Court of Appeals affirmed.  The Court of Appeals held that "defendants

did not 'decrease the dividend rate, reduce or diminish the accrual, payment terms, or

stated value, or extend the date of redemption set forth in...the Certificate with respect

to the Trust's Series A preferred stock' when it replaced the stock with MSX-IBS

preferred stock."  *Miller v. MSX International, Inc.*, 2009 WL 2382632, at *2 (Mich. App.

Aug. 4, 2009).  The court concluded "that plaintiffs, as they did before, had the option to

redeem their stock, 'to the extent that funds are legally available,' any time after

December 31, 2008, and thus, plaintiffs' redemption rights were not affected when

[International] amended its certificate of incorporation."  *Id.*

### 5.     The First Federal Lawsuit

After the December 31, 2008 redemption date came and passed without IBS

redeeming the Trust's Series A preferred stock, the Trust filed a lawsuit in 2009 against

IBS and International to compel the redemption of its Series A preferred stock.  The

lawsuit was assigned to this court.  The parties filed cross-motions for summary

judgment.  International argued it could not be liable for three reasons: (1) the stock at

issue was IBS stock; (2) the IBS Board of Directors made the decision regarding

redemption; and (3) International could not be held liable merely because it was a

subsidiary of IBS.  Plaintiffs agreed to the dismissal of International, and also argued

that the court should not consider International's debt in determining whether IBS was obligated to redeem the Series A preferred stock.  In February, 2012, the court granted IBS's motion for summary judgment on the basis that the funds were not legally available for redemption under Delaware law.  (Doc. 10-2 at Pg ID 60-65).  The court explained that the determination by IBS's Board that there was no surplus available to redeem the Trust's preferred stock was reasonable.  *Id.* at Pg ID 65.  In reaching this conclusion, the court found that the IBS Board properly considered International's debt in determining whether IBS's assets exceeded its total liabilities as the stock of International was IBS's only asset.  *Id.* at Pg ID 63-65.  The court noted that "as IBS's sole asset is its stock in International, the value of International appears key to the analysis." *Id.* at Pg ID 65.  Because International was heavily in debt, the court found that IBS lacked sufficient funds to redeem plaintiffs' preferred stock.  *Id.* at Pg ID 64-65. The parties did not appeal the court's order granting IBS's motion for summary judgment and denying plaintiffs' cross-motion for summary judgment.

> **6.    Incorporation of MSX-IHC, LLC**

The same month this court issued its ruling, another corporate restructuring involving the defendants took place.  Defendants allege this restructuring was necessary to avoid International and IBS filing for bankruptcy.  In February, 2012, MSX-IHC, LLC ("IHC"), also a holding company, issued common units to IBS in return for 100 percent ownership of International.  Thus, International is wholly owned by IHC, which is majority owned by IBS.  In other words, IBS is the overall parent, IHC is the subsidiary parent, and International is the wholly owned subsidiary of IHC.  IHC is not a named

defendant.   IHC issued warrants and preferred equity interests to a group of new external investors as well as common equity interests to certain members of management of International.

### 7.    The Instant Lawsuit

The parties now appear before this court a second time.  Plaintiffs complain that International declared a common dividend of $67.6 million in August, 2014, yet neither IBS nor International redeemed the Trust's common or preferred shares at that time. Plaintiffs allege that the $67.6 million dividend was mostly paid to IHC which used the money for the early redemption of IHC preferred units and to fund payments to International and IBS executives.  The amount of the alleged distribution to management is unknown to the Trust but will be the subject of discovery.  Plaintiffs claim that if they had not been forced to surrender their International shares for IBS shares, that when the August, 2014 dividend was declared, the Trust would have received approximately $10 million, including approximately $1.35 million as its pro rate share of the common dividend, and approximately $8.5 million for the full redemption amount for its Series A preferred shares.  Plaintiffs allege that they would have received these funds if International and IBS were true to representations made in the state court lawsuit that "[t]he same assets, same business and same revenue stream that existed for the shareholders of [International] still exist for the shareholders of [IBS]."  In addition, plaintiffs argue they were entitled to redemption of their preferred shares even prior to the 2014 dividend as they claim that as of December, 2012, the common equity of International was valued at $10.5 million.   In April, 2015, the directors of IBS

conducted a meeting and determined that there were no funds available to redeem any of the Trust's preferred shares.

In February, 2016, plaintiffs filed this lawsuit against International and IBS pleading three causes of action: (1) breach of contract, (2) breach of implied/quasi contract, and (3) unjust enrichment.  Defendants seek dismissal of all counts.

### B. Standard of Law

Rule 12(b)(6) allows the Court to assess whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  "'[N]aked assertions' devoid of 'further factual enhancement' are insufficient to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570).  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

## C. Analysis

**1.    Breach of Contract**

In Count 1 of the Complaint, plaintiffs allege that defendants breached the Settlement Agreement by not redeeming the Trust's Series A preferred stock which was to take place no later than December 31, 2008, and for failing to pay a dividend on its common shares.  Plaintiffs allege that International and IBS had the funds available to redeem the preferred stock no later than August, 2014 when International declared a $67.6 million dividend, and possibly as early as December, 2012, when International allegedly had common equity valued at $10.5 million.

In their motion to dismiss, defendants argue that plaintiffs have failed to plead a breach of contract claim for several reasons.  First, as to plaintiffs' claim that defendants breached the Settlement Agreement by failing to pay a dividend on their common shares, defendants argue that they had no contractual obligation to do so, as there is no such provision in their Settlement Agreement.  Second, as to plaintiffs' claim that defendants failed to redeem the preferred stock in breach of their Settlement Agreement, defendant argue that there was no such requirement in the Settlement Agreement either.  Defendants point out that the redemption requirement is only set forth in the Certificate of Incorporation.  Defendants complain that plaintiffs have not alleged that any of the terms of the Certificate have been changed, and none have been; thus, plaintiffs' breach of contract claim must fail.  In support of their breach of contract claim, however, plaintiffs rely on the Settlement Agreement's requirement that the stock be redeemed according to the date of redemption set forth in the Certificate.

(Settlement Agreement, ¶ 4).   Specifically, the Settlement Agreement provides, in relevant part:

> The Parties acknowledge that under [International's] Amended and Restated Certificate of Incorporation dated March 30, 2001 (the "Certificate"), the dividend on the [International] Series A preferred stock is at a rate per annum equal to 12% of the Preferred Liquidation Value (as defined in the Certificate) and that the date of redemption is set forth in Part III, Section 4(a)(i)(x) of the Certificate.

*Id.* There is no dispute that the mandatory redemption date in the Certificate was December 31, 2008.  Moreover, it is undisputed that defendants never redeemed the Trust's preferred stock.  Given the language of the Settlement Agreement, plaintiffs have set forth a viable claim for breach of contract against both defendants for their failure to redeem the preferred stock on or after December 31, 2008, when funds allegedly became available.

Defendants also claim plaintiffs have not sufficiently pled facts in support of their breach of contract claim because they have not alleged that IBS had the surplus necessary to redeem the preferred shares or to pay a dividend.  Defendants claim that plaintiffs were informed in 2015 that IBS's debt was over $120 million at the end of 2014.  Contrary to defendants' argument, the Complaint does allege that IBS had the funds needed to redeem the preferred shares.  Specifically, paragraph 37 of the Complaint states:

> No later than August of 2014, and possibly as early as December 2012, [International] and [IBS] had legally available funds with which to redeem the Trust's Series A preferred stock to the extent required by Delaware law because, among other things, [International] declared a common dividend of $67.6 million, as set forth above.  Defendants are estopped from denying that the $67.6 million was legally available for redemption of the Trust's preferred shares and to pay a dividend on its common shares.

-10-

(Complaint, ¶ 37).  Plaintiffs plead and argue in their response brief that defendants are barred by the doctrine of judicial estoppel[2] from relying on corporate formalities to avoid their contractual obligations.  In the second state court case, International assured the court and the court held that the "same assets, same business and same revenue stream that existed for the shareholders of [International] still exist for the shareholders of [IBS].  The total debt of the corporate family remained essentially the same, and all that happened is that some of the debt is now held at the holding company parent IBS." (Complaint, ¶ 19).  In their reply brief, defendants counter that judicial estoppel cannot save plaintiffs' claims because the statements were true when made and did  not amount to a promise regarding payment of a dividend or redemption of stock. Defendants also respond that plaintiffs have no claim against International because they no longer own any stock of International.

Defendants' arguments do not carry the day.  The allegations of the Complaint are sufficient to set forth a plausible claim for breach of contract.  According to the Complaint, International's representations in the state court lawsuit that "the same assets, same business, and same revenue stream that existed for the shareholders of [International] still exist for the shareholders of [IBS]" meant that "[International] would use its assets, business and revenue stream to pay dividends and/or redeem the Trust's

_____

[2]Plaintiffs also argue in a footnote that the doctrine of collateral estoppel bars defendants from taking a contrary position in this case.  At this pleadings stage, the court does not reach a conclusion as to whether or not that doctrine applies here, as it is clear that plaintiffs' allegations are sufficient to state a claim without resort to that doctrine.

shares notwithstanding that the Trust would be a shareholder of [IBS] rather than [International]." (Complaint, ¶ 18).  The Complaint alleges that International represented that the IBS shares would be identical to the shares of International formerly held by the Trust.  *Id.*  Thus, contrary to defendants' arguments, International's statements to the Oakland County Circuit Court and Michigan Court of Appeals could easily be interpreted as forward looking.  It is undisputed that the statements were made to counter plaintiffs' arguments that replacing International stock with IBS stock breached the Settlement Agreement because IBS stock was inferior, given that IBS was merely a holding company without any of its own operations, cash, or bank accounts.  The court found that substituting IBS stock for International stock did not alter plaintiffs' right to receive dividends or to redeem its preferred shares.  International represented that the same income stream would exist to pay dividends and redeem the Trust's shares notwithstanding the corporate restructuring, but it is undisputed that once International had sufficient assets to pay a dividend in 2014, neither International nor IBS paid plaintiffs a dividend or redeemed their preferred shares.  Given International's representations to the state court, under the doctrine of judicial estoppel, the allegations of the Complaint are sufficient to state a plausible claim for breach of contract, both for International's failure to pay dividends and for failure to redeem the preferred shares.

The doctrine of judicial estoppel prevents a party who successfully assumed one position in a prior legal proceeding from assuming a contrary position in a later proceeding.  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party

from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLC*, 546 F.3d 752, 757 (6th Cir. 2008) (internal quotation marks and citation omitted).  Although there is no bright line rule for determining when the doctrine of judicial estoppel applies, three factors provide guidance to courts:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, [the courts] regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014) (quoting *New Hampshire*, 532 U.S. at 750–51).  The court need not reach a final decision as to whether or not the doctrine of judicial estoppel applies to the facts presented here.  The allegations of the Complaint in support of that doctrine, however, are sufficiently pled to support a viable claim for breach of contract against International.

The court need not address the question whether the doctrine of judicial estoppel also applies to IBS on plaintiffs' breach of contract claim at this early stage in the proceedings.  The Complaint alleges that plaintiffs are the holders of IBS preferred stock (Complaint, ¶16) and that IBS breached the Settlement Agreement when it failed to redeem the preferred shares when they became due on December 31, 2008, or thereafter, once the funds became available.  *Id. at* ¶¶ 35-38.  These allegations are sufficient to state a claim against IBS for breach of contract.

Several of the key allegations in plaintiffs' Complaint are not even disputed. There is no dispute that pursuant to the terms of the Settlement Agreement, the mandatory redemption date of the Trust's Series A preferred stock was to occur no later than December 31, 2008.  Defendants do not dispute that they never redeemed the Trust's preferred stock at that time or thereafter.  Moreover, defendants do not dispute that had plaintiffs remained a common and preferred shareholder of International, they would have been paid common dividends and their preferred shares would have been redeemed, when International had $67.6 million of legally available funds in 2014.  The Complaint also alleges that International represented to the Oakland County Circuit Court and the Michigan Court of Appeals that it would use available funds to pay the trust.  (Complaint, ¶¶ 18-19).  Based on the above allegations and undisputed facts, defendants' motion to dismiss the breach of contract claim as against International and IBS must be denied.

**2.     Implied/Quasi Contract and Unjust Enrichment**

In Count 2 of their Complaint, plaintiffs assert breach of an implied/quasi contract.   The law recognizes two types of implied contracts: one implied-in-fact, which requires a meeting of the minds that was not reduced to some formality; the other implied-in-law, in which case the court will find the existence of a contract, even where none existed, in order to prevent an injustice.  *Cascaden v. Magryta*, 247 Mich. 267, 270 (1929).   Defendants discuss both types of implied contracts in their motion to dismiss, but in their response brief, plaintiffs have clarified that they only seek to recover under the implied-in-law theory.  Accordingly, the court limits its discussion below to the question whether plaintiffs have stated a claim for breach of a contract implied-in-law.

Defendants discuss the breach of contract implied-in-law claim pled in Count 2 in the same analysis as their discussion of plaintiffs' unjust enrichment claim pled in Count 3. Plaintiffs claim this conflation of causes of action is problematic because breach of a contract implied-in-law is a separate claim from unjust enrichment. Having carefully considered the case law, the court can discern no meaningful distinction between the two labels. Under Michigan law, the theory of a contract implied-in-law is used interchangeably as an unjust enrichment claim. *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991) (explaining that the elements of a "contract-in-law ... to prevent unjust enrichment ... are: (1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain") (citation and quotation marks omitted). Thus, the court finds that defendants' analysis of the two counts interchangeably was appropriate and the court shall follow suit.

"A contract implied-in-law is imposed by fiction of law, to enable justice to be accomplished even in case no contract was intended." *Daimler–Chrysler Serv. N. Amer. v. Summit Nat'l*, 289 F. App'x 916, 925 (6th Cir. 2006) (citation omitted). The Sixth Circuit has noted that once a contract is implied-in-law, courts applying Michigan law "have used [] the phrase . . . 'unjust enrichment' to describe the theory of recovery." *Id.* (collecting cases). The elements of a contract implied- in-law are "[1] there is a receipt of a benefit by a defendant from a plaintiff and [2] retention of the benefit is inequitable, absent reasonable compensation." *Id.* (citing *Matter of Estate of Lewis*, 168 Mich. App. 70, 74 (1988)). If these elements are established, "the law will imply a contract in order to prevent unjust enrichment." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003). The Michigan Supreme Court has emphasized that implying a

contract-in-law to prevent unjust enrichment "should be approached with some caution." *Dumas*, 437 Mich. at 546 (citation and quotation marks omitted).

However, "[t]here is no claim for unjust enrichment when there exists a valid contract covering the same subject matter. *Iverson Indus. v. Metal Mgmt. Ohio, Inc.*, 525 F. Supp. 2d 911, 922 (E.D. Mich. 2007); *see Belle Isle Grill*, 256 Mich. App. at 478. Thus, should the court determine that a valid contract exists between the parties, defendants shall be entitled to dismissal of Counts 2 and 3. At this pleadings stage, however, plaintiffs are entitled to plead in the alternative and the fact that plaintiff seeks to recover under both theories is of no moment at this early juncture.

Plaintiffs claim that International has received a benefit because it failed to redeem preferred stock and to pay common and preferred dividends previously promised in state court, thus saving the amount that was allegedly due and owing to plaintiffs. (Complaint, ¶ 48). Plaintiffs have adequately pled that retention of such a benefit would be inequitable based on International's representations in state court regarding the Trust's allegedly identical rights following the corporate restructuring. *Id.* at ¶¶ 18-19. Based on these allegations, plaintiffs have sufficiently pled a claim for breach of contract implied-in-law or unjust enrichment as to International.

The court turns now to plaintiffs' unjust enrichment claim against IBS. In their response brief, plaintiffs argue that Michigan law does not require a benefit to be conferred directly by a plaintiff to a defendant to support an unjust enrichment claim. Defendants, on the other hand, argue that plaintiffs must allege that defendants received a benefit from plaintiffs to support such a claim. To some extent, both parties are correct. Plaintiffs must allege that defendant received a benefit from the plaintiffs,

but the parties need not be in privity, and the benefit need only be indirect.  Plaintiffs are

correct that Michigan law does not require a direct link between defendants' benefit and

plaintiffs' detriment; rather, the question is whether plaintiffs have shown that their

detriment and defendants' benefit "are related and flow from the challenged conduct."

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000); *see*

*Kammer Ashphalt Paving Co., Inc. v. East China Twp. Sch.*, 443 Mich. 176 (1993)

(allowing equitable relief where school district acted to the plaintiff's detriment by

assuring it of payment bond, which it knew was fraudulent, and the district was indirectly

benefitted by plaintiff subcontractor's construction on school grounds); *In re Automotive*

*Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1015, 1021 (E.D. Mich. 2014) (finding viable

unjust enrichment claim where plaintiffs alleged that they paid inflated prices for the

product sold to others in the distribution chain as a result of defendants' antitrust

conspiracy).  In sum, plaintiffs need not prove IBS directly benefitted from not

redeeming its preferred shares and paying a common dividend, but they must allege

that IBS benefitted at least indirectly.  Plaintiffs have met their burden by alleging that

IBS received a benefit from the Trust when it failed to pay a dividend or redeem

preferred shares when they had available funds.  (Complaint, ¶ 48).  Thus, plaintiffs

have alleged sufficient facts to plead the first element of an unjust enrichment claim

against IBS, namely, that defendant received a benefit from the plaintiff.

The court now considers whether plaintiffs have pled sufficient facts to meet the

second element of an unjust enrichment claim, specifically, whether the benefit would

be inequitable for IBS to retain.  Defendants argue that plaintiffs cannot recover in *quasi*

contract against IBS as it was International, not IBS, that made the representations to

the state court which form the basis for plaintiffs' unjust enrichment claim.  Plaintiffs

respond that IBS may be liable for breach of contract implied-in-law based on

International's representations in state court for three reasons: (1) the doctrine of judicial

estoppel; (2) the theory that IBS ratified International's representations; and (3) the

doctrine of piercing the corporate veil.  The court addresses each argument below.

### a.    Judicial Estoppel

Plaintiffs claim that both defendants may be liable for breach of contract implied-

in-law under the doctrine of judicial estoppel based on International's representations in

state court.  Defendants respond that IBS was not a party in that suit, and thus, cannot

be liable under that doctrine.  *See In re Commonwealth Institutional Sec., Inc.*, 394 F.3d

401, 406 (6th Cir. 2005); *Hockman v. Schuler*, No. 07-CV-14268, 2008 WL 4190610

(E.D. Mich. Sept. 9, 2008).  Based on its absence from that suit, unless plaintiffs prevail

on their ratification or piercing the corporate veil doctrine, as discussed below, IBS is

correct that it cannot be liable under the doctrine of judicial estoppel.

### b.    Ratification

Plaintiffs argue that IBS can be liable for breach of contract implied-in-law based

on the doctrine of ratification.  *See Bertha v. Regal Motor Co.*, 180 Mich. 51, 57-58

(1914) ("It is a proposition of law too fundamental and too well established to require a

citation of authorities that, if a party adopts even unauthorized acts of another, and has

received an accepted benefits accruing therefrom, he thereby adopts and ratifies the

instrumentalities by which the results were obtained and is estoped from denying the

agent was authorized to act.").  Defendants respond that there are no allegations in the

Complaint that IBS adopted statements made by International in the state lawsuit.

Reading the Complaint liberally, however, plaintiffs' allegations are sufficient to set forth a ratification theory as the Complaint alleges generally that IBS made representations to the Trust and/or to the state court in the second state court lawsuit.  (Complaint, ¶ 29). Given that IBS was not a party to that suit, IBS could only have made the representations under the theory of ratification or the doctrine of piercing the corporate veil.  Also, the Complaint alleges that IBS engaged in "previous conduct and admissions" giving rise to their breach of contract implied-in-law claim.  (Complaint, ¶ 42).  This language, read broadly, supports plaintiffs' ratification theory.

### c.   Piercing the Corporate Veil

Plaintiffs also argue that IBS may be liable under the doctrine of piercing the corporate veil.  "Michigan law presumes that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities."   *Seasword v. Hilti, Inc.*, 449 Mich. 542, 547 (1995).  The Michigan Supreme Court explained that the presumption that parent and subsidiary corporations are distinct entities, also called the "corporate veil," "may be pierced only where an otherwise separate corporate existence has been used to 'subvert justice or cause a result that [is] contrary to some other clearly overriding public policy.'" *Id.* (quoting *Wells v. Firestone*, 421 Mich. 641, 650 (1984)).  Michigan courts will not pierce the corporate veil unless, "(1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Servo Kinetics, Inc. v. Tokyo Precision Instr. Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing *Foodland Distrib. v. Ali-Naimi*, 220 Mich. App. 453, 457 (1996)).  The Michigan Supreme Court has held that "[i]n determining whether the corporate entity should be

-19-

disregarded and the parent company held liable on the contracts of its subsidiary because the latter served as a mere instrumentality or adjunct of the former, each case is sui generies and must be decided in accordance with its own underlying facts." *Herman v. Mobile Homes Corp.*, 317 Mich. 233, 243 (1947).

Defendants claim that plaintiffs have failed to articulate how piercing the corporate veil applies to their implied-in-law contract claim. To the contrary, plaintiffs have alleged that International must be bound by its representations in state court under principles of equity. Having found that plaintiffs have sufficiently pled an unjust enrichment claim against International, such a claim would also be viable against IBS should plaintiffs convince the fact finder that the corporate veil should be pierced. Finally, having found that plaintiffs have sufficiently pled their breach of contract implied-in-law or unjust enrichment claim, the court need not address the issue of whether plaintiffs may be entitled to other equitable relief under the court's broad equitable powers.

### D. Conclusion

For the reasons set forth above, defendants' motion to dismiss (Doc. 10) IS DENIED.

IT IS SO ORDERED.

Dated: August 4, 2016

s/George Caram Steeh_____
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

-20-

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 4, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk